Citation Nr: 1755119 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 12-07 778 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri


THE ISSUES

1. Entitlement to an increased disability rating (or evaluation) in excess of 20 percent for post-operative residuals of a right acromioclavicular separation (right shoulder disability).

2. Entitlement to a total disability rating for compensation purposes based on individual unemployability due to service-connected disabilities (TDIU).


(The issue of entitlement to service connection for a noncompensable dental disorder for the purpose of obtaining VA outpatient dental treatment under 
38 C.F.R. § 17.161 will be addressed in a separate decision).


REPRESENTATION

Appellant represented by: Missouri Veterans Commission



WITNESS AT HEARING ON APPEAL

The Veteran (Appellant)


ATTORNEY FOR THE BOARD

E. Blowers, Counsel


INTRODUCTION

The Veteran, who is the appellant, had active service from March 1982 to June 1982, and from July 1983 to January 1988.

This matter came before the Board of Veterans' Appeals (Board) on appeal from a September 2010 rating decision of the RO in St. Louis, Missouri, which, in pertinent part, denied an increased disability rating in excess of 10 percent for the service-connected post-operative residuals of a right acromioclavicular separation (right shoulder disorder). In a November 2014 decision, the Board found that the issue of entitlement to a TDIU had been raised pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009). Further, in a September 2017 rating decision, the RO granted an increased disability rating of 20 percent for the service-connected right shoulder disability from June 23, 2010, the date of claim for an increased disability rating.

In the November 2014 decision, the Board, in pertinent part, remanded the remaining issues on appeal for additional development. A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Failure of the Board to ensure compliance with remand instructions constitutes error and warrants the vacating of a subsequent Board decision. See Stegall v. West, 11 Vet. App. 268, 271 (1998). Having reviewed the record, the Board finds that its November 2014 directives, to include scheduling a VA shoulder examination, were adequately complied with on remand; therefore, the Board finds the issues on appeal are ripe for adjudication.

The Veteran testified from St. Louis, Missouri, at a September 2014 Board videoconference hearing before the undersigned Veterans Law Judge (VLJ), who was seated in Washington, DC. The hearing transcript has been associated with the record. The Board has reviewed the physical claims files and both the Veterans Benefits Management System (VBMS) and the "Virtual VA" files so as to insure a total review of the evidence.


FINDINGS OF FACT

1. For the entire relevant rating period on appeal from June 23, 2010, the service-connected right shoulder disability did not manifest as recurrent dislocation of the humerus at the scapulohumeral joint, malunion of the humerus, fibrous union of the humerus, nonunion of the humerus, loss of head of the humerus, or ankylosis of scapulohumeral articulation; and painful limitation of motion, even when considering flare-ups of pain, was not limited to midway between the side and shoulder level.

2. The Veteran is not rendered unable to obtain (secure) or maintain (follow) substantially gainful employment as a result of service-connected disabilities for any period, and a referral to the Director of Compensation and Pension for consideration of a TDIU under 38 C.F.R. § 4.16(b) is not warranted.


CONCLUSIONS OF LAW

1. From June 23, 2010, the date of claim for increase, the criteria for a disability rating in excess of 20 percent for the service-connected right shoulder disability have not been met or more nearly approximated. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.1, 4.3, 4.7, 4.10, 4.20, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5200-03 (2017).

2. The criteria for a TDIU have not been met for any period. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.340, 3.341, 4.3, 4.15, 4.16, 4.18, 4.19, 4.25 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and to Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C. §§ 5102, 5103, 5103A, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.326(a). The United States Court of Appeals for Veterans Claims (Court) issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and 
(5) effective date of the disability. 

A claim for a TDIU is, in essence, a claim for an increased rating. See Rice, 22 Vet. App. 447; Norris v. West, 12 Vet. App. 413, 420 (1999). In a claim for increase, the VCAA requirement is generic notice, that is, the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

In July 2010, VA issued the Veteran VCAA notice that informed of the evidence generally needed to support a claim for an increased disability rating, what actions the Veteran needed to undertake, and how VA would assist in developing the claim. The July 2010 VCAA notice was issued to the Veteran prior to the September 2010 rating decision on appeal. Further, the issues on appeal were readjudicated in a March 2012 Statement of the Case (SOC), and a September 2009 Supplemental Statement of the Case (SSOC); therefore, there was no defect with respect to the timing of the VCAA notice. See Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Regarding the duty to assist in this case, the Veteran was afforded VA right shoulder examinations in July 2010 and May 2015. The examination reports are of record. To that end, when VA undertakes to either provide an examination or to obtain an opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The record reflects that, taken together, the VA examiners reviewed the record, conducted in-person examinations, and rendered the requested opinions. 

All relevant documentation, including Social Security Administration (SSA) records and VA and private treatment (medical) records, has been secured, or attempted to be secured, and all relevant facts have been developed. There remains no question as to the substantial completeness of the issues on appeal. 38 U.S.C. 
§§ 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.159, 3.326(a). Any duties imposed on VA, including the duties to assist and to provide notification, have been met as set forth above.

Increased Disability Rating for Right Shoulder Disability

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) found in 38 C.F.R. Part 4. 
38 U.S.C. § 1155. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21 (2017). 

Where there is a question as to which of two disability ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 
38 C.F.R. § 4.7. It is the defined and consistently applied policy of VA to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3. 

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 
38 C.F.R. § 4.25 (2017). Pyramiding, the rating of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a veteran's service-connected disabilities. 38 C.F.R. § 4.14 (2017). It is possible for a veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; however, the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

When an unlisted condition is encountered it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous. Conjectural analogies will be avoided, as will the use of analogous ratings for conditions of doubtful diagnosis, or for those not fully supported by clinical and laboratory findings. Nor will ratings assigned to organic diseases and injuries be assigned by analogy to conditions of functional origin. 38 C.F.R. § 4.20.

When rating disabilities of the musculoskeletal system, 38 C.F.R. § 4.40 allows for consideration of functional loss due to pain and weakness causing additional disability beyond that reflected on range of motion measurements. DeLuca v. Brown, 8 Vet. App. 202 (1995); Mitchell v. Shinseki, 25 Vet. App. 32 (2011), Further, 38 C.F.R. § 4.45 provides that consideration also be given to decreased movement, weakened movement, excess fatigability, incoordination, and pain on movement, swelling, and deformity or atrophy of disuse. Painful motion is considered limited motion at the point that pain actually sets in. See VAOPGCPREC 9-98. 

With any form of arthritis, painful motion is an important factor of disability, the facial expression, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to affected joints. Muscle spasm will greatly assist the identification. Sciatic neuritis is not uncommonly caused by arthritis of the spine. The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. Crepitation either in the soft tissues such as the tendons or ligaments, or crepitation within the joint structures should be noted carefully as points of contact which are diseased. Flexion elicits such manifestations. The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint. 38 C.F.R. § 4.59.

Where an increase in an existing disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). The relevant temporal focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence).

Initially, the Board notes that in the June 23, 2010 rating decision, the RO granted the 20 percent disability rating under Diagnostic Code 5203 for dislocation of the clavicle or scapula of the major extremity. A 20 percent disability rating is the highest available schedular disability rating under Diagnostic Code 5203. See 38 C.F.R. § 4.71a. As such, in the instant decision, the Board has considered alternative diagnostic codes for a disability of the shoulder and arm.

Under Diagnostic Code 5200, ratings of 30, 40, and 50 percent may be assigned when there is ankylosis of scapulohumeral articulation. 38 C.F.R. § 4.71a. Under Diagnostic Code 5201, a 20 percent disability rating is warranted for limitation of motion of the major arm at shoulder level, a 30 percent disability rating is warranted for limitation of motion of the major arm midway between side and shoulder level, and a 40 percent disability rating is warranted for limitation of motion of the major arm to 25 degrees from the side. Id.

Under Diagnostic Code 5202, a 20 percent disability rating is warranted when there is recurrent dislocation of the humerus at the scapulohumeral joint with infrequent episodes and guarding of movement only at the shoulder level, or malunion of the humerus with moderate deformity. A 30 percent disability rating is warranted when there is recurrent dislocation of the humerus at the scapulohumeral joint with frequent episodes and guarding of all arm movements, or malunion of the humerus with marked deformity. A 50 percent disability rating is warranted when there is fibrous union of the humerus of the major arm, a 60 percent disability rating is warranted when there is nonunion of the humerus (false flail joint) of the major arm, and an 80 percent disability rating is warranted when there is loss of head of the humerus (flail shoulder) of the major arm. Id.

As discussed above, in the September 2017 rating decision, the RO granted the 20 percent disability rating under Diagnostic Code 5203 from June 23, 2010, the date of claim for an increased disability rating; therefore, the Board will consider whether the increased disability rating (from 10 percent disabling) was warranted at any point during the one year period prior to June 23, 2010. See Hart, 21 Vet. App. 505. Review of all the evidence of record reflects that the symptomatology warranting a 20 percent disability rating first manifested prior to June 23, 2009. In other words, the symptomatology first manifested over one year prior to the date of increased rating claim. As such, the appropriate effective date for the increased disability rating of 20 percent for dislocation of the clavicle or scapula of the right shoulder is June 23, 2010, the date of claim for increase. See 38 U.S.C. § 5110(b)(1) (2012); 38 C.F.R. § 3.400(o) (2017); Gaston v. Shinseki, 605 F.3d 979, 984 (Fed. Cir. 2010). 

Further, the Board has considered whether the Veteran is entitled to a separate compensable rating for any disability related to the service-connected right shoulder disability. In the September 2017 rating decision, based upon the findings of the VA examiner at the May 2015 VA shoulder examination, the Veteran was granted service connection for a right shoulder surgical scar. The Veteran did not subsequently express disagreement with the initial noncompensable rating assigned for the scar, and the rating of the scar is not before the Board at this time. Additionally, the evidence does not reflect that any other disabilities related to the right shoulder disability have been identified; therefore, the Board finds that the Veteran is not entitled to a separate compensable rating for any additional disability related to the service-connected right shoulder disability.

Finally, having reviewed all the evidence of record, both lay and medical, the Board finds that, for the entire relevant rating period on appeal from June 23, 2010, the service-connected right shoulder disability did not manifest as recurrent dislocation of the humerus at the scapulohumeral joint, malunion of the humerus, fibrous union of the humerus, nonunion of the humerus, loss of head of the humerus, or ankylosis of scapulohumeral articulation. The evidence also shows that even when considering flare-ups of pain, pain did not limit motion to midway between the side and shoulder level. 

Review of the July 2010 and May 2015 VA shoulder examinations, the SSA documentation, and the VA and private medical records reflects that the Veteran has not been diagnosed with ankylosis of the right shoulder, or any disorder of the humerus, to include recurrent dislocations, malunion, fibrous union, nonunion, or loss of head; therefore, a disability rating in excess of 20 percent under either Diagnostic Code 5200 or 5202 is not warranted. 38 C.F.R. § 4.71a. 

Based upon the above, the only question remaining before the Board is whether the Veteran's painful limitation of motion limits movement of the arm to no more than midway between the side and shoulder level. In the June 2010 claim, the Veteran advanced that range of motion had deteriorated in the right shoulder. At the September 2014 Board videoconference hearing, while the Veteran testified to having pain the right shoulder, the Veteran also testified to being able to move the right arm "all the way," just at a slower pace and in a different way than normal. In fact, the undersigned VLJ noted at the hearing that the Veteran had "pretty good motion as far as moving slowly" in the right shoulder/arm.

In an August 2010 private treatment record, the Veteran was noted to have full range of motion in the right shoulder; however, there was no indication as to where objective evidence of painful motion set in. A subsequent February 2011 VA treatment record reported that abduction of the right shoulder was to 150 degrees. While the point at which objective evidence of painful motion set in was not recorded, considering all the other evidence of record, it is unlikely that, even during a painful flare-up, motion would not have been limited to midway between the side and shoulder level (approximately 45 degrees).

Per the report of the July 2010 VA shoulder examination, the there was 70 degrees of abduction in the right shoulder, with objective evidence of painful motion at 70 degrees. The report also reflects that the Veteran advanced being further limited by approximately 70 percent during a flare-up. Assuming the Veteran's statement to be correct, the Board notes that such limitation would still be higher than midway between the side and shoulder level (approximately 45 degrees).

The Veteran received a new VA shoulder examination in May 2015. At that time, the Veteran advanced not having flare-ups of pain. Upon range of motion testing, abduction was to 150 degrees, with objective evidence of painful motion at 150 degrees. The VA examiner noted that the Veteran had a decreased ability to reach over the head. Even if the Veteran were still experiencing flare-ups at this time, the Board notes that the evidence of record conveys that such flare-ups would not have been severe enough to limit the right arm movement to midway between the side and shoulder level. 

Upon review of all the evidence of record, the Board finds that the preponderance of the evidence is against the assignment of an increased disability rating in excess of 20 percent for the service-connected right shoulder disability at any point during the relevant period on appeal. The evidence shows that, from June 23, 2010, the service-connected right shoulder disability did not manifest as recurrent dislocation of the humerus at the scapulohumeral joint, malunion of the humerus, fibrous union of the humerus, nonunion of the humerus, loss of head of the humerus, or ankylosis of scapulohumeral articulation. Painful limitation of motion, even when considering flare-ups of pain, was not limited to midway between the side and shoulder level. Pursuant to 38 C.F.R. § 4.71a, Diagnostic Codes 5200 and 5202, a disability rating in excess of 20 percent would only be warranted if there were recurrent dislocation of the humerus, fibrous union of the humerus, nonunion of the humerus, loss of head of the humerus, and/or ankylosis of scapulohumeral articulation. 38 C.F.R. § 4.71a. The evidence of record does not reflect any such findings. 

Additionally, as discussed above, even during a painful flare-up, the pain never limited the range of motion of the arm to midway between the side and shoulder level. As such, a disability rating of 30 percent or higher under Diagnostic Code 5201 is not warranted. Id.

Further, as the Veteran already has the maximum available disability rating under Diagnostic Code 5203 for dislocation of the clavicle or scapula, no higher disability rating can be assigned on that basis for the Veteran's service-connected right shoulder disability. Id. As the preponderance of the evidence is against the claim for an increased disability rating in excess of 20 percent for the service-connected right shoulder disability, the claim for an increased disability rating in excess of 20 percent for the service-connected right shoulder disorder from June 23, 2010 must be denied. 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.71a, Diagnostic Codes 5200-02.


Extraschedular Referral Consideration

The Board has also considered whether referral for an extraschedular rating is warranted for the service-connected right shoulder disability on appeal. Ratings shall be based as far as practicable upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular ratings are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extraschedular rating commensurate with the average earning capacity impairment due exclusively to the service connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1).
 
The Court has clarified that there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. Initially, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability are inadequate. 
See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (holding that either the veteran must assert that a schedular rating is inadequate or the evidence must present exceptional or unusual circumstances). Second, if the schedular rating does not contemplate the veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the veteran's disability picture requires the assignment of an extraschedular rating. Thun v. Peake, 22 Vet. App. 111 (2008). However, the Board gives no deference to the Director's adjudication and the Board is permitted to exercise jurisdiction over the question of entitlement to an extraschedular rating whether or not the Director of the Compensation and Pension Service finds an extraschedular rating warranted. See Kuppamala v. McDonald, 27 Vet. App. 447 (2015) (applying principles announced in Wages to 38 C.F.R. § 3.321(b) extraschedular adjudication, namely, Director of C&P decision is not evidence, and is not a policy decision, but is simply a decision or adjudication that is adopted by the RO and reviewed de novo by the Board); Cf. Wages v. McDonald, 27 Vet. App. 233 (2015) (holding that a decision of TDIU under 38 C.F.R. § 4.16(b) by the Director of C&P is not evidence, and is not a policy decision, but is simply a decision or adjudication that is adopted by the RO and reviewed de novo by the Board).

With respect to the first prong of Thun, the right shoulder disability has manifested primarily as painful limitation of motion, including painful flare-ups, weakness, dislocation of the clavicle or scapula, stiffness, instability, locking, lack of endurance, subluxation, and a significant effect on various activities of daily life. As discussed above, painful limitation of motion and weakness are specifically considered under the schedular rating criteria when rating orthopedic disabilities. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca, 8 Vet. App. 202 (additional limitation of motion due to orthopedic factors are incorporated as part of the schedular rating criteria). Further, dislocation of the clavicle or scapula, and the symptoms related to the dislocations, are also considered under Diagnostic Code 5203. 38 C.F.R. § 4.71a. 

The functional limitations imposed by the Veteran's orthopedic disability, including interference with the daily activities of life, are primarily the result of the right shoulder pain caused by engaging in these activities; therefore, as recognized in DeLuca, the effects of the Veteran's right shoulder pain and associated limitations on daily life are specifically contemplated by the schedular rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59. The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 38 U.S.C.A. § 1155. "Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 38 C.F.R. § 4.1. In this case, the problems reported by the Veteran are specifically contemplated by the criteria discussed above, including the functional limitations and the effects on daily life.

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate.

The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 
38 U.S.C.A. § 1155. "Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 38 C.F.R. § 4.1. In this case, the problems reported by the Veteran are specifically contemplated by the criteria discussed above. In the absence of exceptional factors associated with the right shoulder disorder, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). The issue of entitlement to a TDIU is addressed below.


Entitlement to a TDIU

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. 38 U.S.C. § 1155. Total disability is considered to exist when there is any impairment which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. Total disability may or may not be permanent. 38 C.F.R. § 3.340(a)(1). Total ratings are authorized for any disability or combination of disabilities for which the Rating Schedule prescribes a 100 percent evaluation. 38 C.F.R. § 3.340(a)(2).

TDIU may be assigned when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. The service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue will be addressed in both instances. 38 C.F.R. § 4.16(a),(b).

If there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war. 38 C.F.R. § 4.16(a).

If a veteran's disabilities do not meet the objective combined rating percentage criteria of 38 C.F.R. § 4.16(a), it then becomes necessary to consider whether the criteria for referral for extraschedular consideration are met under § 4.16(b) criteria. It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Submission to the Director, Compensation and Pension Service, for extraschedular consideration is warranted in all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in § 4.16(a). 38 C.F.R. § 4.16(b).

Individual unemployability must be determined without regard to any non-service-connected disabilities or a veteran's advancing age. 38 C.F.R. 
§§ 3.341(a), 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993). The sole fact that a veteran is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether a veteran is capable of performing the physical and mental acts required by employment, not whether a veteran can find employment. Id. at 361. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in a veteran's favor. 38 C.F.R. 
§ 4.3. 

In Faust v. West, 13 Vet. App. 342 (2000), the Court defined "substantially gainful employment" as an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that a veteran actually works and without regard to a veteran's earned annual income. In Hatlestad v. Derwinski, 5 Vet. App. 524, 529 (1993), the Court held that the central inquiry in determining whether a veteran is entitled to a TDIU is whether a veteran's service-connected disabilities alone are of sufficient severity to produce unemployability. The determination as to whether a total disability is appropriate should not be based solely upon demonstrated difficulty in obtaining employment in one particular field, which could also potentially be due to external bases such as economic factors, but rather to all reasonably available sources of employment under the circumstances. See Ferraro v. Derwinski, 1 Vet. App. 326, 331-332 (1991). 

In evaluating a veteran's employability, consideration may be given to the level of education, special training, and previous work experience in arriving at a conclusion, but not to age or impairment caused by non-service-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

Marginal employment is not considered substantially gainful employment and generally is deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist in certain cases when earned annual income exceeds the poverty threshold on a facts-found basis. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 38 C.F.R. § 4.16(a). Marginal employment, odd-job employment, and employment at half the usual remuneration is not incompatible with a determination of unemployability if the restriction to securing or retaining better employment is due to disability. 38 C.F.R. § 4.17(a) (2017).

The ultimate issue of whether a TDIU should be awarded is not a medical issue, but rather is a determination for the adjudicator. See Moore v. Nicholson, 21 Vet. App. 211, 218 (2007) (ultimate question of whether a veteran is capable of substantial gainful employment is not a medical one; that determination is for the adjudicator), rev'd on other grounds sub nom, Moore v. Shinseki, 555 F.3d 1369 (Fed. Cir. 2009). Although VA must give full consideration, per 38 C.F.R. § 4.15, to "the effect of combinations of disability," VA regulations place responsibility for the ultimate TDIU determination on VA, not a medical examiner's opinion. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013); 38 C.F.R. § 4.16(a); see also Smith v. Shinseki, 647 F.3d 1380, 1385-86 (Fed. Cir. 2011) (VA is not required to obtain an industrial survey from a vocational expert before making a TDIU determination but may choose to do so in an appropriate case).

After a review of all the evidence, lay and medical, the Board finds that a TDIU is not warranted for any period. Initially, the Board notes that the Veteran's disabilities do not meet the regulatory schedular rating requirements of 38 C.F.R. 
§ 4.16(a) for consideration of TDIU. Throughout the course of this appeal, the 

Veteran has been service connected for a right shoulder disability (20 percent disabling), and a right shoulder scar (noncompensable), for a combined disability rating of 20 percent. 

Next, having considered all the evidence of record, lay and medical, the Board finds that referral under 38 C.F.R. § 4.16(b) to the VA Compensation and Pension Director for extraschedular consideration is not warranted. In its November 2014 decision, the Board explained that at the September 2014 Board videoconference hearing the Veteran testified to medically retiring from the Bureau of Prisons, at least in part because the service-connected right shoulder disability prevented qualifying on weapons; however, the Board notes that the Veteran also testified to being medically separated from the Bureau of Prisons due to foot and other non-service-connected disorders.

An April 2003 private opinion letter explained that the Veteran was seeking disability retirement as a corrections officer. Per the letter, the Veteran attributed the need to retire to multiple health problems, both service-connected and non-service-connected. These health problems included the service-connected right shoulder disability and non-service-connected hip, neck, and foot disorders. At the conclusion of the examination, the private examiner opined that collectively these disabilities rendered the Veteran unable to perform the required employment duties; however, the private examiner also explained that, "radiographically there is no overwhelming abnormality seen that one would automatically associate with a profound disability." In other words, the private examiner effectively opined that no single disability, to include the service-connected right shoulder disability, caused the Veteran's inability to continue working as a corrections officer.

Per the report of the July 2010 VA shoulder examination, the VA examiner assessed that, while the right shoulder disorder prevents sports and severely restricts the ability to do chores, there was only a moderate impact on exercise and recreation. In a February 2016 addendum opinion to the February 2015 VA shoulder examination, the VA examiner opined that the right shoulder disorder did not prevent any activities of daily living.


SSA records reflect that the Veteran sought SSA disability benefits on or about 2012. Per the SSA records, the Veteran alleged being unable to work due to multiple disabilities, to include the service-connected right shoulder disability, and the non-service-connected hip, neck, elbow, and feet disorders. The Veteran also alleged being unable to work due to non-service-connected mental disorders.

During the course of the Veteran's SSA appeal, the SSA obtained a Vocational Interrogatory from a vocational rehabilitation counselor. Per the vocational report, the counselor assessed that the Veteran would be unable to work as a corrections officer because it required a very heavy exertional level; however, the vocational counselor then went on to opine that the Veteran could work at various unskilled jobs that required only a medium exertional level. Per the vocational counselor, jobs available to the Veteran include industrial cleaner, machine finisher, lamination assembler, office helper, collator operator, and small parts assembler.

The Board has reviewed the available VA and private treatment records that have been associated with the file. Such treatment records do not reflect that the service-connected disabilities restrict substantially gainful employment beyond that discussed above.

Having reviewed all the evidence of record, both lay and medical, the Board finds that the weight of the lay and medical evidence demonstrates that the criteria for a TDIU have not been met or more nearly approximated for any period. While the evidence conveys that the Veteran is currently unemployed, the evidence also shows that, when the Veteran was medically separated from the Bureau of Prisons, it was due to multiple medical disabilities, both service- and non-service-connected. A private medical examiner specifically opined that no single disability was severe enough to warrant medical retirement. A vocational specialist has specifically assessed that, while the Veteran would not be able to work as a prison guard, there are multiple unskilled jobs that the Veteran could perform, despite the multiple service- and non-service-connected disorders. 


For the above reasons, the Board finds that the weight of the evidence is against a TDIU at any point during the relevant period on appeal. As the preponderance of the evidence is against entitlement to a TDIU, the benefit-of-the-doubt doctrine is not for application, and a TDIU must be denied. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.


ORDER

A disability rating in excess of 20 percent for the service-connected right shoulder disability is denied.

A TDIU is denied.





____________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs